SUMMONS ISSUED

FILED
CLERK
2012 SEP 21 AM II: 20
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOSE TORRES,

                          Plaintiff,

              -v-

THE CITY OF NEW YORK; New York City Police
Department ("NYPD") Officer ("P.O.") Carmella
Cameron (Shield No. 21789), In Her Individual
Capacity; and P.O.s JOHN DOES 1 through 9, In Their
Individual Capacities (The names being fictitious, as
the true names and shield numbers are not presently
known);

                         Defendants.

---

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

CV-12        4732

Index No.

ROSS, J.

POHORELSKY, M.J.

---

       Plaintiff JOSE TORRES, by his attorneys DAVID B. RANKIN and JANE L. MOISAN

of the Law Office of Rankin and Taylor, as and for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and

    Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

    Act of 1871, as amended, codified as 42 U.S.C. § 1983; and pendant claims under the

    Constitution of the State of New York, Article I §§ 6, 11 and 12; and the laws of the State of

    New York.

2. Plaintiff JOSE TORRES' rights were violated when officers of the New York City Police

    Department ("NYPD") unconstitutionally, and without any legal basis, seized, detained,

    arrested, and used unlawful force against the plaintiff, and caused him to be prosecuted.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (3-4).

5. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the Fourth, and Fourteenth Amendments to the Constitution of the United States.

6. Pursuant to New York State General Municipal Law § 50-E, the plaintiff filed a timely Notice of Claim with the New York City Comptroller on or about March 30, 2012, within ninety (90) days of the events herein complained of. This Court has supplemental jurisdiction over plaintiff's claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

7. Plaintiff's claim was not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

8. Venue is proper pursuant to 28 U.S.C. § 1391 in that plaintiff's claim arose in the Eastern District of New York.

9. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

10. Plaintiff JOSE TORRES ("Mr. TORRES") is, and was at all times relevant to this action, a resident of the State of New York and the County of Richmond.

11. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a

police force, as well as the employment of police officers, as said risks attach to the public consumers of the services provided by NYPD.

12. Upon information and belief, New York City Police Department Officer ("P.O.") CARMELLA CAMERON (Shield No. 21789) and P.O. JOHN DOES 1 through 9[1] (referred to collectively as the "officer defendants") were at all times relevant agents, servants, employees, and officers of the NYPD.

13. The officer defendants are being sued in their individual capacities.

14. At all times relevant, the officer defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as agents, servants, employees, and officers of the NYPD and incidental to the lawful pursuit of their duties as agents, servants, employees, and officers of the NYPD.

15. The true names and shield numbers of defendants P.O. JOHN DOE 1 through 9 are not currently known to the plaintiff. However, all of said defendants are agents, servants, employees, and officers of the NYPD. Accordingly, said defendants are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants becomes known to plaintiff, and (b) that the Law Department should immediately begin preparing their defense in this action.

---

[1] By identifying these officers as "John Doe," plaintiff is making no representation as to their gender.

## STATEMENT OF FACTS

16. On January 16, 2012 at approximately 11:30 a.m. and thereafter in the vicinity of 155 York Avenue, Staten Island, New York in the County of Richmond, defendant CARMELLA CAMERON (Shield No. 21789) ("CAMERON") and defendant DOES 1 through 9 of the 120th Precinct entered Mr. TORRES' home and beat and arrested him without cause or justification.

17. At all times relevant herein, Mr. TORRES lived with his domestic partner and fiancé, Yazmine Flores ("Ms. Flores"), and their three daughters, aged five (5), two (2) and one (1) years old.

18. At the time and place described *supra*, the officer defendants, claiming they were responding to a domestic violence call, entered the home of Mr. TORRES and Ms. Flores while they were at home with their three children, sister and her friend.

19. The officer defendants ascertained that both Mr. TORRES and Ms. Flores were safe and unharmed, yet remained in the apartment.

20. Mr. TORRES informed the officer defendants he planned to exit his home and go to the store. While preparing to leave the apartment, Mr. TORRES witnessed defendant DOE 1 playing with a deck of playing cards sitting out. Mr. TORRES and asked DOE 1, in sum and substance, to stop.[2]

21. As Mr. TORRES walked toward his front door, he was shoved from behind by an officer defendant. Mr. TORRES turned and stated he was on his way out, yet was shoved again with escalating force. Defendant DOE 2[3] then punched Mr. TORRES in the head.

---

[2]      Upon information and belief, defendant DOE 1 is a tall, bald male officer out of the 120th Precinct.

[3]      Upon information and belief, defendant DOE 2 is a Spanish, female officer out of the 120th Precinct.

22. At this time, the officer defendants attacked Mr. TORRES, knocking him to the floor, and proceeded to deliver kicks and blows to his back and abdomen while he lay face-down on the floor, and while his three young children screamed and cried in fear.

23. Upon information and belief, one such blow was delivered with a metal object and lacerated Mr. TORRES' scalp, causing Mr. TORRES to faint or lose consciousness for a moment.

24. When Mr. TORRES asked what he had been beaten with, the officer defendants responded by laughing and issuing slurs, in sum and substance, such as, "YOU DIRTY SECTION 8 FOOD STAMP DEPENDENTS" and "LOW LIVES," while continuing to beat him as he lay on the floor.[4]

25. The other officer defendants present did not intervene or participated in the use of force.

26. Upon information and belief, while one officer defendant pinned Mr. TORRES down with his knee to Mr. TORRES' neck, and another with his foot into Mr. TORRES' back, Mr. TORRES was placed in handcuffs.

27. Mr. TORRES was placed in a marked police vehicle, where he witnessed Ms. FLORES being taken away in handcuffs.

28. Mr. TORRES inquired what was happening with his wife and was told, in sum and substance, his wife was being charged with interfering with his arrest.[5]

29. Mr. TORRES was then transported to the 120th Precinct where he repeatedly asked for medical care and to speak with the Internal Affairs Bureau, yet instead was left sitting on a bench while bleeding.

---

[4]    Upon information and belief, one of the officers issuing slurs is a male officer out of the 120th Precinct with the last name of "Cortez."

[5]    Upon information and belief, defendant DOE 3 is a short, Caucasian male officer out of the 120th Precinct with short, sandy blonde hair.

30. Defendant DOE 4[6] then transported Mr. TORRES to Richmond University Medical Center, where he received seven (7) staples in his head, ice for his back, and medication.

31. Mr. TORRES was then transported back to the 120th precinct, where he was informed that instead of being charged with interfering with Mr. TORRES' arrest, Ms. Flores would now be charged with the attack the officer defendants had inflicted upon Mr. TORRES. The officer defendants then told Mr. TORRES it was mandatory for him to sign the paperwork that wrongfully accused Ms. FLORES with domestic violence, or he would go to jail for "A VERY, VERY LONG TIME."

32. Defendant CAMERON falsely swore out a criminal complaint against Mr. TORRES. On January 17, 2012, Mr. TORRES was arraigned on County of Richmond Docket Number 2012R1000526 on charges of Resisting Arrest, P.L. § 205.30 and Disorderly Conduct, P.L. § 240.20(1). Mr. TORRES was released without bail at approximately 5:00 p.m., after approximately thirty (30) hours of detention.

33. At his March 20, 2012 return date, the case was adjourned for six months in consideration of dismissal.

34. As a result of defendants' use of force against him, Mr. TORRES experiences pain and discomfort in and around his shoulders and abdomen and has lost opportunities to work due to the aggravation spinal injuries.

35. As a further and ongoing result of defendants' conduct, Mr. TORRES and his family experience emotional injuries and anxiety, and his children experience nightmares as well as fear and anxiety when they see police officers or hear police sirens.

---

[6]     Upon information and belief, defendant DOE 4 is a short, blonde male officer out of the 120th Precinct with the last name of "Phillips" and was the arresting officer for Yasmine Flores.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

36. Mr. TORRES incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

37. The officer defendants, under color of state law, subjected Mr. TORRES to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiff of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

    a. Freedom from unreasonable seizure of his person, including the excessive use of force;

    b. Freedom from arrest without probable cause;

    c. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which plaintiff was aware and did not consent; and

    d. Freedom from deprivation of liberty without due process of law.

38. Defendants' deprivation of Mr. TORRES' constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983

39. Mr. TORRES realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

40. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

41. The officer defendants were present for the incident described *supra* and witnessed the unlawful arrest and use of force against Mr. TORRES.

42. The use of force against Mr. TORRES was obviously excessive and unjustified under the circumstances yet the officer defendants failed to take any action or make any effort to intervene, halt or protect Mr. TORRES from being subjected to excessive force.

43. The failure of the officer defendants to intervene in the face of violations to Mr. TORRES' constitutional rights resulted in the injuries and damages set forth above.

## THIRD CLAIM
## *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983

44. Mr. TORRES realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

45. All of the acts and omissions by the officer defendants described above were carried out pursuant to overlapping policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

46. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the officer defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

47. The acts complained of were carried out by the aforementioned officer defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD, all under the supervision of ranking officers of the NYPD.

48. The aforementioned customs, practices, procedures and rules of the City of New York and

the NYPD include, but are not limited to, the following unconstitutional practices:

    a.  Using excessive force on individuals, including but not limited to those who have already been handcuffed;

    b.  Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    c.  Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

    d.  Retaliating against officers who report police misconduct; and

    e.  Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

49. The existence of aforesaid unconstitutional customs and policies may be inferred from

repeated occurrences of similar wrongful conduct, as documented in the following civil

rights actions filed against the City of New York:

    a.  Thompson v. City of New York, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, police officers use their Asp, or expandable metal baton, to beat plaintiff and also apply Mace to his face without cause);

    b.  Lotorto v. City of New York, 10-CV-1223 (ILG) (JMA) (E.D.N.Y.) (police officers beat, arrest and destroy a video recording of a bystander who was recording an arrest occurring in public);

    c.  Zabala v. City of New York, 3771/2010 (Sup. Ct., Kings Co.) (police officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered);

    d.  Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (police officers beat and use Mace upon arrestees even though they were both already handcuffed and compliant);

    e.  Long v. City of New York, 09-CV-9216 (AKH) (S.D.N.Y.); *People v. Pogan*, 06416-2008 (Sup. Ct., N.Y. Co.) (officer who purposefully swore out a false complaint and used excessive force is convicted of falsifying police records and was prosecuted for recklessly using physical force);

    f.  Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (police officers beat and use Mace upon a compliant arrestee while he was already in handcuffs);

g. <u>Taylor-Mickens v. City of New York</u>, 09-CV-7923 (RWS) (S.D.N.Y.) (police officers at the 24th Precinct issue four summonses to a woman in retaliation for her lodging a complaint with the Civilian Complaint Review Board at the precinct);

h. <u>Colon v. City of New York</u>, 09-CV-0008 (E.D.N.Y.) In an Order dated November 25, 2009, which denied the CITY's motion to dismiss on <u>Iqbal/Twombly</u> grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, the Honorable District Court Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officer of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

i. <u>Carmody v. City of New York</u>, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

j. <u>McMillan v. City of New York</u>, 04-CV-3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

k. <u>Avent v. City of New York</u>, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.) (same);

l. <u>Smith v. City of New York</u>, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.) (same);

m. <u>Powers v. City of New York</u>, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

n. <u>Dotson v. City of New York</u>, 03-CV-2136 (RMB) (S.D.N.Y.) (officers arrest and use excessive force against a candidate for City Council for trespassing in his own residential building);

o. <u>Nonnemann v. City of New York</u>, 02-CV-10131 (JSR) (AJP), 2004 U.S. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

p. Richardson v. City of New York, 02-CV-3651 (JG) (CLP) (E.D.N.Y.) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

q. Barry v. New York City Police Department, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

r. Walton v. Safir, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

s. White-Ruiz v. The City of New York, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

t. Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department);

u. Sorlucco v. New York City Police Department, 89-CV-7225 (CCH), 88 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting that a fellow officer had raped her); and

v. Kaufman v. City of New York, 87-CV-4492 (RO), 1992 U.S. Dist. LEXIS 14049 (S.D.N.Y.) (bystander arrested for observing an unlawful arrest in public, requesting the officer's badge number, and telling the officer that he planned to file a report about the arrest).

50. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct**, are further evidenced, *inter alia*, by the following:

a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[7]

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Commissioner Raymond E. Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[8]

d. Regarding defendant CITY's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a city agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[9] When it does, however, Police Commissioner Kelly controls whether

---

[7]      Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

[8]      Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December   2,   2009,   *available   at*   http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[9]      In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507   (about   5%).   *See,*   CCRB   Jan.-Dec.   2007   Status   Report   at   p.   19,   *available   at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted *de facto* policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia*, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[10] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[11]

51. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct**, are further evidenced, inter alia, by the following:

    a. Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

    b. In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

    c. Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

52. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the City of New York.

---

[10]    Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[11]    Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

53. The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the City of New York, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

54. All of the foregoing acts by defendants deprived Mr. TORRES of federally protected rights, including, but not limited to, the right to:

    a.  Freedom from unreasonable seizure of his person, including the excessive use of force;

    b.  Freedom from arrest without probable cause;

    c.  Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Mr. TORRES was aware and did not consent; and

    d.  Freedom from deprivation of liberty without due process of law.

55. Defendant CITY knew or should have known that the acts alleged herein would deprive the Mr. TORRES of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

56. Defendant CITY is directly liable and responsible for the acts of the officer defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the City of New York and NYPD, and to require compliance with the Constitution and laws of the United States.

57. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City of New York have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

58. The aforementioned policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned policies, practices and/or customs, the officer defendants felt empowered to exercise unreasonable and wholly unprovoked force against Mr. TORRES in his home and in front of his family, and to arrest him without probable cause. Pursuant to the aforementioned policies, practices and/or

customs, defendants failed to intervene in or report other defendants' violation of Mr. TORRES' rights.

59. Mr. TORRES' injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

60. The actions of the officer defendants resulted from and were taken pursuant to the aforementioned de facto policies and/or well-settled and widespread customs and practices of the City of New York, and implemented by agents or employees of the NYPD, employing wholly unprovoked and excessive force and falsely arresting and prosecuting against an arrestee, as in the present situation.

61. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by police officers and were directly responsible for the violation of the Mr. TORRES' constitutional rights.

**FOURTH CLAIM**
**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
**(Against Defendant CITY)**

62. Mr. TORRES incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63. The conduct of each officer defendant alleged herein, occurred while he or she was on duty and in uniform, and/or in and during the course and scope of his or her duties and functions as New York City police officers, and/or while he or she was acting as an agent and employee of defendant CITY, clothed with and/or invoking state power and/or authority,

and, as a result, defendant CITY is liable to Mr. TORRES pursuant to the state common law doctrine of <u>respondeat superior</u>.

64. As a result of the foregoing acts and omission of the officer defendants alleged <u>supra</u>, Mr. TORRES was deprived of his liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**FIFTH CLAIM**
**<u>VIOLATIONS OF THE CONSTITUTION OF THE STATE OF NEW YORK</u>**
**(Against Officer Defendants)**

65. Mr. TORRES incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. The officer defendants' conduct alleged herein breached the protections guaranteed to Mr. TORRES by the New York State Constitution, Article I, §§ 6, 11 and 12, including the following rights: (a) freedom from unreasonable seizure of his person, including the excessive use of force; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Mr. TORRES was aware and did not consent; (d) freedom from the lodging of false charges against him by police officers; (e) freedom from having police officers fabricate evidence against him; (f) freedom from malicious prosecution without probable cause, instituted with malice; and (i) freedom from deprivation of liberty without due process of law.

67. The prosecution of Mr. TORRES was undertaken maliciously and without probable cause, and terminated in Mr. TORRES' favor.

68. Defendants' deprivation of Mr. TORRES' rights under the New York State Constitution resulted in the injuries and damages set forth above.

## SIXTH CLAIM
## ASSAULT AND BATTERY

69. Mr. TORRES incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70. By the actions described above, the officer defendants did inflict assault and battery upon Mr. TORRES. The acts and conduct of the officer defendants were the direct and proximate cause of injury and damage to Mr. TORRES and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

71. As a result of the foregoing, Mr. TORRES was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, garden variety psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM
## FALSE ARREST AND FALSE IMPRISONMENT

72. Mr. TORRES incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73. By the actions described above, the officer defendants caused Mr. TORRES to be falsely arrested and imprisoned without reasonable or probable cause, unlawfully and without a warrant, and without any right or authority to do so. The acts and conduct of the officer defendants were the direct and proximate cause of injury and damage to Mr. TORRES and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

74. As a result of the foregoing, Mr. TORRES was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75. The Mr. TORRES incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76. By the actions described above, the officer defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Mr. TORRES. The acts and conduct of the officer defendants were the direct and proximate cause of injury and damage to Mr. TORRES and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

77. As a result of the foregoing, Mr. TORRES was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM
## NEGLIGENCE

78. Mr. TORRES incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79. The officer defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the Mr. TORRES.

80. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. TORRES and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

81. As a result of the foregoing, the Mr. TORRES was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING

82. Mr. TORRES incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83. Defendant CITY negligently hired, screened, retained, supervised, and trained the officer defendants. The acts and conduct of the officer defendants were the direct and proximate cause of injury and damage to Mr. TORRES and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

84. As a result of the foregoing, the Mr. TORRES was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, the Mr. TORRES demands judgment against the defendants individually and jointly and prays for relief as follows:

a.  That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.  That he be awarded punitive damages against the officer defendants; and

c.  That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.  For such other further and different relief as to the Court may seem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

Dated:   New York, New York
             September 20, 2012

Respectfully Submitted,

By: _____

David B. Rankin
Jane L. Moisan
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
350 Broadway, Suite 701
New York, New York 10013
t: 212-226-4507
